NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY *v.*
W. L. THOMPSON *et al.*

(No. 8259)

Submitted January 22, 1936. Decided February 11, 1936.

*Hall, Goodwin & Paul,* for appellant.
*Erskine, Palmer & Curl,* for appellees.

HATCHER, PRESIDENT:

This suit involves the construction of an insurance agreement to pay the insured seven dollars periodically if "disabled from performing work of any nature."

The defendant, W. L. Thompson, is the insured. In

1931, a rifle bullet shattered the head of the humerus in his left shoulder. The humerus ankylosed to the scapula in or following the process of healing. This condition prevents the shoulder joint from functioning and has caused the shoulder muscles to atrophy. The insurer, the plaintiff Insurance Company, paid Thompson the agreed stipend until July, 1934, when payments were discontinued on the ground that Thompson's disability was not total. After waiting a number of the seven-dollar periods, Thompson instituted six separate actions against the insurer before a justice, for $7.00 each. Thompson also expressed his intention to bring other like actions whenever the periodical payments were refused. The insurer then brought this suit in the circuit court to enjoin the prosecution of such actions before the justice, and to secure one judicial determination of its liability. Relief was denied, and an appeal followed.

The evidence demonstrates that Thompson, now aged thirty-eight years, has a very meager education; that prior to his injury, he had worked only as a coal miner and is not trained in other manual labor; that his left elbow, wrist and hand function normally and he has no injury except the one in his left shoulder which would seriously impede labor; that he has made only one attempt (unsuccessful) to secure employment since his injury; that he "can do any labor a one-armed man can do," and can even assist his one normal arm with movements of his crippled arm below the shoulder, provided they do not throw any strain on the shoulder; and that one-armed men can perform various kinds of manual labor with some degree of efficiency. Thompson admitted knowing a one-armed man who was a coal loader, but was not questioned as to the manner in which the man performed that work.

One of the classes of conditions which afford equity jurisdiction to prevent a multiplicity of suits is described by Pomeroy as follows: "Where the dispute is between two individuals, A and B, and B institutes or is about to institute a number of actions either successively or simultaneously against A, all depending upon the same legal

questions and similar issues of fact, and A by a single equitable suit seeks to bring them all within the scope and effect of one judicial determination." Pomeroy's Eq. Juris. (4th·Ed.), sec. 245. For illustrative cases, see *Oil Co.* v. *Brick Co.*, 27 Okla. 180, 111 Pac. 326 (monthly breaches of a contract for years) ; *Zeigler* v. *Beasley*, 44 Ga. 56 (a series of promissory notes) ; *Tarbox* v. *Hartenstein*, (Tenn.) 4 Baxter 78 (weekly salary payments) ; *Hosiery Co.* v. *Arnold*, 143 N. Y. 265, 269, 38 N. E. 271 (royalties on a patent) ; *Railway* v. *Dowe*, 70 Tex. 5, 7 S. W. 368 (time checks) ; *Featherstone* v. *Carr,* 132 N. C. 800, 44 S. E. 592 (monthly rentals) ; *Coville & Garber* v. *Gilman*, 13 W. Va. 314, 336 (oil "pumped and sold"). This rule assumes that A "has *some* defense, either legal or equitable, to the numerous suits instituted or threatened against him." *Storrs* v. *Rr. Company*, 29 Fla. 617, 11 So. 226, 227. In such case, the prevention of a multiplicity of suits is a substantive ground of equity jurisdiction. Lawrence on Eq. Juris., sec. 1022; 21 C. J. subject, Equity, sec. 48.

The actions instituted, and the actions contemplated by Thompson, against the Insurance Company all depend upon the same legal question and the same issue of fact. In this suit, the Company seeks to bring all such actions within the effect of one judicial determination. The Company presents a meritorious defense to the actions instituted and the ones threatened against it. Therefore, equity has jurisdiction of this cause.

After reviewing the authorities on insurance disability clauses in *Hayes* v. *Ins. Co.*, 114 W. Va. 323, 325, *et seq.*, 171 S. E. 824, 826, Judge Maxwell, expressed the views of the court as follows: "Of course, an insured would not be sustained in a claim for benefits under a disability clause because of his inability to engage in his accustomed vocation, if his indisposition did not prevent him from engaging in practical manner in some other and useful work. But the fact that he might do some trifling, unimportant and inconsequential things would not preclude his right under the disability clause. Total disability is a relative term. Each case must be consid-

64

ered on its own facts." The disability clause in the Thompson policy is "disabled from performing work of any nature." This clause does not insure against disability to perform work as readily as the normal man or against inability to procure satisfactory work. The clause refers only to disability to perform any sort of useful work in a practical manner. The loss of an arm renders the performance of most manual labor much more difficult; nevertheless, gainful labor can be performed despite such loss if the unfortunate one (otherwise normal) has the will to do so. The evidence shows, and common knowledge confirms, the fact to be that many one-armed men do perform some kinds of manual labor with a fair degree of efficiency. Because Thompson's left arm is sound below the shoulder, he is better equipped for labor than the ordinary one-armed man. Hence, he is not "disabled from performing work of any nature," and the Company is entitled to relief.

Thompson's wife and the justice before whom the suits were brought, were made parties to the bill and were restrained from further action relating to the suits. The allegations of the bill are insufficient as against Mrs. Thompson. An injunction to stay proceedings in a court of law is not addressed to, nor does it operate upon, the court. Pomeroy, *supra,* sections 1360 and 2058; 32 C. J. subject, Injunctions, sec. 71. Therefore, the injunction herein should have been addressed to Thompson alone.

The temporary injunction will be reinstated and made permanent so far, and so far only, as it relates to Thompson.

*Reversed in part and remanded.*